**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | 3:20-CV-200-LRH-CLB |
| Plaintiff, | **Default Judgment of Forfeiture and Final Judgment of Forfeiture** |
| v. | |
| $16,939.00 IN UNITED STATES CURRENCY, | |
| Defendant. | |

**I. FACTS**

On December 12, 2019, at approximately 10:18 A.M., Caryn Kruger (Kruger) was driving a gray 2019 Chevrolet Equinox, bearing an Arizona license plate, on Interstate 80 westbound in Washoe County, Nevada. Charles Liotta (Liotta), who was seated in the front passenger seat, was the only other occupant of the vehicle.

A Nevada Highway Patrol (NHP) officer observed the Equinox driving at a speed that he estimated was about five miles per hour above the sixty-five mile-per-hour speed limit. The officer activated his moving radar and recorded the Equinox traveling at seventy-four miles per hour. The officer caught up with the Equinox and again tracked its speed with his radar, recording a second speed of seventy miles per hour. The officer initiated a traffic stop of the Equinox for Speeding, a violation of Nevada law.

The NHP officer approached the Equinox and made contact with Kruger and Liotta through the front passenger-side window. The officer advised Kruger of the reason for the stop.

/ / /

The NHP officer requested Kruger's documentation. Kruger produced a California driver's license. When the officer learned that the vehicle was a rental, he requested the rental agreement. Kruger advised that the vehicle had been rented by her father, and Kruger further stated that they had just dropped her father off at the airport. Liotta said that he did not have government-issued identification on hand. He identified himself by providing a date of birth and a Social Security number. Liotta communicated that his driver's license was issued by New York.

At the NHP officer's request, Kruger exited the vehicle and accompanied him to his vehicle. The officer submitted Kruger's information for records and wants-and-warrants checks.

While awaiting the results of the checks, the NHP officer engaged Kruger in consensual conversation. According to Kruger: (1) she and Liotta were en route from Reno, Nevada to their home in Nevada County, California; (2) Liotta had gone skiing with friends and Kruger's father in Reno; (3) she and Liotta had spent the previous night at the Nugget Casino in Reno; and (4) she and Liotta were planning to stop in Sacramento, California to drop off the Equinox.

When asked whether Liotta lived in New York or California, Kruger advised that Liotta was a New York resident but was temporarily living in California.

When asked about her trip itinerary, Kruger stated that she had flown from California to New York approximately one week earlier, stayed there for less than a week, and, then, flown to Reno, where she had been staying at various hotels.

When asked about her occupation, Kruger said that she was a nursing assistant. The NHP officer requested Kruger to identify her employer. She responded that she had not yet found a job. Kruger communicated that she had been living in California for approximately one year.

When asked about Liotta, Kruger stated: (1) Liotta traveled between New York and California often; (2) Liotta worked in landscaping; and (3) that Liotta was also currently unemployed.

Kruger also told the NHP officer that her father had paid for their vacation.

The NHP officer asked a backup NHP officer to continue working on the traffic citation. The lead officer made contact with Liotta and engaged him in consensual conversation. According to Liotta: (1) he and Kruger were traveling from Reno; (2) while in Reno, he and Kruger had stayed at the Nugget and Peppermill Casinos; and (3) he and Kruger had just dropped Kruger's father off at the airport.

When asked where his identification was located, Liotta stated that he had left it in California. The NHP officer suggested that without an identification document Liotta would have been unable to drink alcohol or gamble. Liotta responded that he had been unable to do either during the vacation.

When asked about his occupation, Liotta said that he worked in construction. Kruger had just told the NHP officer that Liotta worked in landscaping.

When asked about Kruger's occupation, Liotta said that she was a nurse but could not identify where she worked other than a hospital in Nevada City, California. Kruger had just stated that she was a nursing assistant and was currently unemployed.

The NHP officer asked Liotta whether the Equinox contained any drugs or large sums of currency. Liotta stated that there was a marijuana vape pen in the vehicle but no large sums of money. Previously, Kruger had told a backup NHP officer that the vehicle contained no marijuana or large sums of currency.

At the NHP officer's request, Liotta exited the vehicle. Liotta consented to a pat down. The officer felt a large bundle in one of Liotta's jacket pockets, and Liotta gave the officer consent to remove the item. The officer identified the item as a large bundle of rubber-banded United States currency. The officer also felt another large bundle in the other jacket pocket and, with Liotta's permission, removed the item and identified it as another large bundle of rubber-banded United States currency.

Liotta said that the currency represented gambling proceeds. The NHP officer reminded Liotta that, based on what Liotta had just stated, he had been unable to gamble due to not having his identification in Reno.

3

A backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine alerted to the presence of the odor of illegal drugs coming from the Equinox.

Based on the canine alert, investigators performed a probable-cause search of the Equinox. In the vehicle, investigators discovered a November 30, 2019, receipt from The Home Depot for sixteen twenty-seven gallon totes, three pruners, two pruning snippers, and a large tarp. Investigators also located four cellular telephones.

The NHP officer reengaged Kruger in consensual conversation.

When asked about the source of the currency, Kruger stated that her father had given her the money from the sale of a house. Liotta had just asserted that the currency represented gambling proceeds. The NHP officer asked Kruger to identify the value of the currency, and she responded that she did not know. She guessed that it totaled a couple of thousand dollars. A later official bank count determined that the currency totaled $16,939. In the illegal-drugs trade, it is common for couriers to be unaware of the amount of money that they are carrying.

When asked for more details about the currency, Kruger said that the currency was to be used to purchase a recreational vehicle. The NHP officer advised Kruger that according to Liotta the money represented gambling proceeds. Kruger now stated that Liotta had been gambling. The NHP officer then advised Kruger that Liotta had said that he was without his identification on the trip and, thus, was unable to gamble. Kruger responded by advising that she had been gambling too. Kruger explained that the stories kept changing because she was nervous. She volunteered that the currency was not "drug money."

The NHP officer reengaged Liotta in consensual conversation.

Liotta now insisted that the currency had been given to him and Kruger by Kruger's father, because Kruger's father "wanted to see us do well." He said that the value of the currency was $21,000. Liotta said that he had answered "no" to the NHP officer's earlier question about having large amounts of currency because he had not regarded the currency

4

as a large amount. Now, when the officer asked Liotta whether he considered $21,000 to be a large amount of currency, Liotta answered that he did. Liotta said nothing about buying a recreational vehicle.

Based on the Home Depot receipt found in the Equinox and his training and experience, the NHP officer asked Liotta whether he was a marijuana trimmer. Liotta then sighed and said that he and Kruger "trimmed all season long and . . . that's everything we got." The officer explicitly asked whether the money had come from Kruger's father, and Liotta shook his head indicating that it had not. Liotta explained that they were paid in cash by the marijuana farm. He was unsure whether the farm was operating legally under California law. He said that they received $100 per pound trimmed and that they could trim 600 pounds per day.

A special agent employed by the DEA arrived on scene.

Kruger consented to completing a Currency Seizure Questionnaire with the DEA agent. During the attendant interview, Kruger communicated the following:

    a. Liotta had driven from New York to Reno, where he had picked up Kruger earlier in the week;

    b. The source of the currency was a combination of (1) her and Liotta's savings, (2) gifts and loans from her father, and (3) Liotta's recent gambling winnings in Reno;

    c. The money was being maintained in the form of bulk cash because Liotta did not trust banks and Liotta was without identification;

    d. Kruger was unable to identify the amount of money given and/or lent to her and Liotta by her father; and

    e. The Reno casinos would not have records of Liotta's gambling winnings because Liotta won the money in small amounts, below casino reporting requirements.

The DEA agent then confronted Kruger with the Home Depot receipt found in the Equinox. Kruger communicated the following:

5

      a.    Kruger initially denied having made the purchase, but she then asserted that she purchased some storage items for Halloween decorations;

      b.    Kruger eventually stated that the currency's source was her and Liotta's earnings from trimming marijuana in California;

      c.    Regarding the marijuana trimming, Kruger said that she and Liotta were paid in cash, that she did not believe that the operation was a legal business, and that they were paid $75 per pound of marijuana trimmed; and

      d.    Kruger now said that her father had not given them any of the currency.

Liotta consented to completing a Currency Seizure Questionnaire with the NHP officer. During the attendant interview, Liotta communicated the following:

      a.    The currency represented earnings from marijuana trimming;

      b.    Liotta had initially concealed the truth because he did not want to get Kruger in trouble;

      c.    The marijuana farm was not legal;

      d.    Liotta maintained a bank account but could not explain why he was carrying all of the money around in bulk-cash form.

While Kruger and Liotta were completing the Currency Seizure Questionnaires, a backup officer placed the currency along the roadside in the brush. Another backup officer deployed his certified, reliable canine—trained to detect the odor of illegal drugs. The canine was a different canine than the canine that had been deployed in the vicinity of the Equinox. The canine found the currency and alerted to the odor of illegal drugs coming from it.

At the conclusion of the traffic stop, the DEA seized the currency.

A later official bank count determined that the currency totaled $16,939. The currency was composed of the following denominations:

6

    a.    $14 in $1 bills (14 bills);

    b.    $85 in $5 bills (17 bills);

    c.    $20 in $10 bills (2 bills); and

    d.    $16,820 in $20 bills (841 bills).

Currency involved in the illegal-drugs trade is often composed heavily of small denominations.

At the conclusion of the traffic stop, the DEA seized the currency.

In his administrative claim, Claimant asserted that the currency represented money that he had given Kruger to purchase a recreational vehicle on his behalf. In Kruger's and Liotta's statements to investigators, they (1) ultimately contended that the currency was proceeds of marijuana trimming at an illegal farm in California; and (2) asserted that Kruger's father had not given them the money.

The $16,939 in United States currency is the entirety of the defendant currency.

## II. PROCEDURE

On April 20, 2020, the United States filed a verified Amended Complaint for Forfeiture in Rem, ECF No. 5, alleging the $16,939 (defendant property):

    a.    is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    b.    is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    c.    is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled

///

7

Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

On April 22, 2020, the Court entered an Amended Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 7, and the Clerk issued the Amended Summons and Warrant of Arrest in Rem, ECF No. 8.

Pursuant to the Order, ECF No. 7, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Amended Complaint, ECF No. 5, the Amended Order, ECF No. 7, the Amended Summons and Warrant, ECF No. 8, and the Notice of Complaint for Forfeiture. Notice was published according to law.

Pursuant to Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice is sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Bruce R. Thompson U.S. Courthouse and Federal Building, 400 South Virginia Street, 3rd

Floor, Reno, Nevada 89501, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on James A. Blum, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Amended Complaint, ECF No. 5; Amended Order for Summons and Warrant, ECF No. 7; Amended Summons and Warrant, ECF No. 8.

On May 7, 2020, the United States Marshals Service served the Amended Complaint, the Amended Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Amended Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take Into Custody Exhibits, ECF No. 9-1, p. 3.

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from April 29, 2020, through May 28, 2020. Notice of Filing Proof of Publication Exhibits, ECF No. 10-1, p. 5.

On May 4, 2020, the United States Attorney's Office (USAO) attempted to serve Kaitlyn Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The mail was returned as attempted not known and unable to forward. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 3, 7-8, 10-28, 30-34.

On May 4, 2020, the USAO attempted to serve Kaitlyn Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The mail was returned as attempted not known and unable to forward. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 3, 7-8, 10-28, 35-39.

On May 4, 2020, the USAO served and attempted to serve Kaitlyn Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in

9

Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The certified mail was returned as unclaimed. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 3, 7-8, 10-28, 40-45.

On May 4, 2020, the USAO served Caryn Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 3, 7-8, 10-28, 46-48.

On May 4, 2020, the USAO served Caryn Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 3-4, 7-8, 10-28, 49-51.

On May 4, 2020, the USAO served and attempted to serve Caryn Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The certified mail was returned as unclaimed. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 4, 7-8, 10-28, 52-57.

On May 4, 2020, the USAO attempted to serve Kaitlyn McKeever by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The mail was returned as attempted not known and unable to forward. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 4, 7-8, 10-28, 58-62.

On May 4, 2020, the USAO attempted to serve Kaitlyn McKeever by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and

Warrant of Arrest in Rem, and the Notice. The mail was returned as attempted not known and unable to forward. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 4, 7-8, 10-28, ECF No. 11-2, p. 2-6.

On May 4, 2020, the USAO served and attempted to serve Kaitlyn McKeever by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The certified mail was returned as unclaimed. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 4, 7-8, 10-28, ECF No. 11-2, p. 7-12.

On May 4, 2020, the USAO served and attempted to serve Charles Liotta by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The certified mail was returned as unable to forward. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 4, 7-8, 10-28, ECF No. 11-2, p. 13-16.

On May 4, 2020, the USAO served John Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 5, 7-8, 10-28, ECF No. 11-2, p. 17-19.

On May 4, 2020, the USAO served and attempted to serve John Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. The certified mail was returned as not deliverable as addressed and unable to forward. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 5, 7-8, 10-28, ECF No. 11-2, p. 20-23.

On May 4, 2020, the USAO served Sandra Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for

Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 5, 7-8, 10-28, ECF No. 11-2, p. 24-26.

On May 4, 2020, the USAO served Sandra Kruger by regular and certified return receipt mail with the Amended Complaint for Forfeiture in Rem, the Amended Order for Summons and Warrant of Arrest in Rem, the Amended Summons and Warrant of Arrest in Rem, and the Notice. Notice of Filing Service of Process-Mailing Exhibits, ECF No. 11-1, p. 5, 7-8, 10-28, ECF No. 11-2, p. 27-29.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

Kaitlyn Kruger is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Exhibit (Ex.) 1.

Caryn Kruger is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Ex. 2.

Kaitlyn McKeever is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Ex. 3.

Charles Liotta is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Ex. 4.

John Kruger is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Ex. 5.

Sandra Kruger is not in the military service within the purview of the Servicemen's Civil Relief Act of 2003. Ex. 6.

Kaitlyn Kruger is neither a minor nor an incompetent person.

Caryn Kruger is neither a minor nor an incompetent person.

Kaitlyn McKeever is neither a minor nor an incompetent person.

Charles Liotta is neither a minor nor an incompetent person.

John Kruger is neither a minor nor an incompetent person.

Sandra Kruger is neither a minor nor an incompetent person

On July 6, 2020, the United States filed a Motion for Entry of Clerk's Default against the $16,939, Kaitlyn Kruger, Caryn Kruger, Kaitlyn McKeever, Charles Liotta, John Kruger, Sandra Kruger, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Motion for Entry of Clerk's Default, ECF No. 12.

On July 24, 2020, the Clerk of the Court entered a Default against the $16,939, Kaitlyn Kruger, Caryn Kruger, Kaitlyn McKeever, Charles Liotta, John Kruger, Sandra Kruger, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. Entry of Clerk's Default, ECF No. 13.

**III. The Requirements for Default were met.**

    **A. Legal Standard**

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings pursuant to Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain pursuant to Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed pursuant to Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof pursuant to Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986); *SATA GmbH & Co. KG v. USA Italco Int'l Ltd.*, No. 3:18-CV-00351-MMD-

/ / /

WGC, 2019 WL 4601513, at *3 (D. Nev. Sept. 20, 2019); *Covenant Care California, LLC v. Shirk*, No. 217CV00956JADVCF, 2018 WL 3429669, at *1 (D. Nev. July 16, 2018).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

**B. The Forfeiture Requirements for Default Were Met.**

a. <u>Judgment Sought</u>

Pursuant to Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of relief listed in the Amended Complaint for forfeiture.

b. <u>Default and Entry of Default</u>

As shown above, the United States requested entry of Clerk's Default against the $16,939, Kaitlyn Kruger, Caryn Kruger, Kaitlyn McKeever, Charles Liotta, John Kruger, Sandra Kruger, and all persons or entities who may claim an interest in the defendant property in the above-entitled action. ECF No. 12. The Clerk entered the Default as requested. ECF No. 13.

c. <u>Notice</u>

Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days. ECF No. 10. Pursuant to Fed. R. Civ. P. Supp. Rule G(4)(b), the United States served the Amended Complaint, the Amended Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Amended Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest on all known potential claimants. ECF No. 11.

      d. <u>Legal Sufficiency of the Complaint</u>

The Amended Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Amended Complaint described the defendant property with reasonable particularity. The Amended Complaint stated where the seizure of the defendant property occurred and its current location. The Amended Complaint identified the statutes under which the forfeiture action has been brought. The Amended Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Supp. R. G(2); ECF No. 5.

      e. <u>Status of Potential Claimants</u>

No person or entity has filed a claim and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

      a. <u>The Plaintiff Would be Prejudiced Without a Judgment</u>

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Amended Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested by Kaitlyn Kruger, Caryn Kruger, Kaitlyn McKeever, Charles Liotta, John Kruger, and Sandra Kruger. *United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.").

      b. & c. <u>The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.</u>

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Amended Complaint sufficiently alleges the facts of the case.

/ / /

/ / /

     d.   <u>The Amount of Money at Stake</u>

The value of the defendant property was clearly established in the Amended Complaint, ECF No. 5, and the defendant property is forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6).

> Under the fourth *Eitel* factor, the court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. Plaintiff has provided evidence that the currency, a sum of $24,000, was furnished or intended to be furnished in exchange for marijuana, a serious violation of federal law.
>
> *United States v. Twenty-Four Thousand Dollars ($24,000) in U.S. Currency*, No. 02:09-CV-2319-LRH, 2010 WL 2695637, at *3 (D. Nev. July 2, 2010) (quotation marks and citation omitted).

The Amended Complaint alleges the serious crime of exchanging or intending to exchange moneys, negotiable instruments, securities, or other things of value for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is the tainted currency related to a completed or contemplated illegal-drugs transaction in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*. The money at stake is property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq*.

     e.   <u>There Are No Possible Disputes of Material Fact</u>

No issues of material fact exist and the allegations of the Amended Complaint are established as a matter of law. The property is subject to forfeiture because law enforcement can demonstrate that the defendant property:

    a.   is all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

    b.   is all proceeds traceable to an exchange for a controlled substance or listed chemical in violation of Subchapter I of the Controlled

      Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

  c. is all moneys, negotiable instruments, and securities used or intended to be used to facilitate violations of Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, et seq., and is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

  d. is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," here Subchapter I of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (incorporated through 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D)), or a conspiracy to commit such offense, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

  f. <u>Default Was Not the Result of Excusable Neglect</u>

The record shows that the claimants and potential claimants were properly served with the Amended Complaint, Amended Order, Amended Summons and Warrant, and the Notice and failed to file a claim and answer to the Amended Complaint. There is no evidence of excusable neglect.

  g. <u>Public Policy Does not Prevent Default Judgment</u>

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the claimant and potential claimants did not file a claim and an answer to the government's Amended Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.
> *Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

/ / /

Denying the government's motion would not further public policy. While cases should be decided on the merits when possible, the claimants and potential claimants have not contested the facts of the Amended Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. See Covenant Care California, 2018 WL 3429669, at *2.

### IV. Judgment

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to Kaitlyn Kruger, Caryn Kruger, Kaitlyn McKeever, Charles Liotta, John Kruger, Sandra Kruger, and all persons or entities who may claim an interest in the defendant property and Final Judgment of Forfeiture as to the $16,939.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against Kaitlyn Kruger, Caryn Kruger, Kaitlyn McKeever, Charles Liotta, John Kruger, Sandra Kruger, and all persons or entities who may claim an interest in the $16,939.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against the $16,939.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendant property be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS HEREBY CERTIFIED, pursuant to 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

DEBRA K. KEMPI
CLERK

(By) DEPUTY CLERK

9/21/2020
DATE